UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOYCE RESHKE, as Personal Representative
of the Estate of Robert A. Reshke, deceased,

    Plaintiff,

v.                                              Case No.: 8:04-cv-2035-T-23MAP

GUARANTEE TRUST LIFE INSURANCE
COMPANY, an Illinois corporation,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action to recover benefits under a credit life insurance policy purchased in connection with the sale of a recreational vehicle. The Defendant claims the insured falsely misrepresented material facts about his prior medical treatment on the application for insurance; accordingly, it seeks summary judgment (doc. 21). In response, the Plaintiff, who is the insured's widow, states her husband revealed his condition to the Defendant's agent during the application process (doc. 28). Because an applicant's statements to an agent about material medical conditions can be imputed to the insurer under Florida law, I recommend the Defendant's summary judgment motion be denied.[1]

    *A. Standard of Review*

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no

---

[1] The district judge referred the matter to me for a report and recommendation (doc. 27). *See* 28 U.S.C. § 636 and Local Rule 6.01(b).

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.*

   *B. Background*

On February 16, 2001, Robert Reshke unexpectedly suffered a collapsed lung. He went to the emergency room, was treated, and then discharged the same day. Two days later, the same lung collapsed. During his ten days in the hospital a thorough examination showed more than just a collapsed lung. A CT scan revealed "extensive emphysematous changes with bulae in the aspices and the right mid-lung field anteriorly." [2] In other words, according to Reshke's pulmonologist, Reshke had emphysema and his smoking had likely caused the disease which in turn had probably contributed to the lung's collapse. *See* doc. 23 (deposition of Dr Aranibar at pp. 8-10).[3]

Reshke's pulmonary experience scared him. In fact, he stopped smoking. Now in his 60s, he wanted to enjoy life and travel. On April 9, 2001, accompanied by his wife and her brother and sister-in-law (the Oliveros), Reshke purchased a RV at Lazy Days RV Center. During their four or five hour stay at Lazy Days that day, Reshke did not hide his past medical event and its impact on his view of live. Indeed, he explained to his salesman the life altering event that had spurred him

---

[2] Radiology report of CT chest dated 2/14/2002 at doc. 23, ex. 2.

[3] Although Reshke's pulmonologist cannot recall his specific conversations with Reshke during Reshke's hospitalization, the physician testified that he would have discussed the likely cause for the lung's collapse. *See* deposition of Dr. Aranibar at pp. 15-16.

to buy. At some point during the sales process, someone at Lazy Days brought up the subject of credit life. Plaintiff said her husband looked at her, and they quickly decided to accept the offer despite the sizeable one-time premium required.

A question on the application asked if the insured debtor "[w]ithin the past five years you have received medical care, treatment or diagnosis by a member of the medical profession for any of the following: … any condition involving an abnormality of … lungs?" *See* doc. 25, Exh. A. Plaintiff says her husband informed Clyde Bailey, the Defendant's agent, about his collapsed lung. Bailey apparently did not think it important. Reshke checked the "no" box and paid a single premium of $8,959.90 for $100,000 in benefits.[4]

Slightly more than a year after buying the RV, Reshke died of lung cancer. None of Reshke's medical tests or examinations before the sale revealed any cancer. In its motion for summary judgment, the Defendant claims Reshke materially misrepresented his health condition; hence, it justifiably rescinded its coverage pursuant to § 627.409 (Fla. Stat.).[5] The Plaintiff, on the

---

[4] Admittedly, Plaintiff has little recollection of the specific conversation between her husband and Bailey. Nonetheless, she consistently maintains that her husband informed Bailey and the salesman about his collapsed lung. Her husband, she said, told "everybody" about the collapsed lung. *See* doc. 26, deposition of Joyce Reshke at pp. 22-27. The Oliveros specifically recall Reshke telling the salesman but do not remember meeting Bailey. Regardless, Bailey certified he read the questions to Reshke and that Reshke answered them accordingly (doc. 25, ex. A).

[5] That section provides in pertinent part:

(1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:

(a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.

other hand, contends her husband disclosed his condition to the Defendant's agent. In short, the Defendant was on notice.

*C. Discussion*

In *Hardy v. Am. So. Life Ins.,* 211 So. 2d 559 (Fla. 1968), the plaintiff with her husband purchased a Buick and a credit life policy. During the sale, the plaintiff informed the agent about her husband's debilitating condition, terminal cancer. Irrespective, the salesman sold her the policy, and the company issued a certificate of life insurance. When Hardy died, the company denied her claim contending Hardy failed to meet the "sound health" provision of the contract. She sued, and the Florida Supreme Court awarded her benefits reasoning an agent's knowledge about the material facts of the prospective insured's health is imputable to the insurer. *See also Johnson v. Life Ins. Co. of Ga.,* 52 So. 2d 813 (Fla. 1951); *Fresh Supermarket Foods, Inc., v. Allstate Ins. Co.,* 829 So. 2d 1000, 1001-02 (Fla. Dist. Ct. App. 2002) (reversing summary judgment because genuine issues of fact existed as to whether insurer's agent was aware of insured's alleged misrepresentations on application).

Anticipating *Hardy's* application, the Defendant contends the application's clear language prohibited the agent from waiving or changing "any of the insurability requirements" or any "provision including the Eligibility for Insurance in the Certificate." *See* doc. 21 at p. 11. Thus, Reshke's statements about his condition to the agent are immaterial and do not negate his

---

(b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

requirement to inform the insurer about his condition. *See Steele v. Jackson Nat'l Life Ins. Co.*, 691 So. 2d 525, 528 (Fla. Dist. Ct. App. 1987) (affirming summary judgment for insured on grounds that applicant could not rely on agent's alleged statement that proffered medical condition was insignificant).

But *Steele's* holding is limited and distinguishable from this case. Unlike here, the agent in *Steele* acted independently; namely, the agent was licensed to sell coverage for several carriers. When an agent or broker acts independently, that agent or broker acts on behalf of the insured rather than the insurer. *Steele,* 691 So. 2d at 527. *See generally Almerico v. RLI Ins. Co.,* 716 So. 2d 774 (Fla. 1998); *Guarente-Desantolo v. John Alden Life Ins. Co.,* 744 So. 2d 1123 (Fla. Dist. Ct. App. 1999) (denying summary judgment for insurer based on misrepresentation because genuine material facts existed as to whether broker was an agent of insured or insurer). Defendant concedes Bailey, and Lazy Days in particular, acted as its on site agent in conformance with its agreement with Lazy Days. *See* doc. 21 at pp. 10-11. Hence, Bailey was not an independent broker but the Defendant's captive agent.

   *D. Conclusion*

Because a genuine issue of material fact exists as to whether the Defendant's agent knew about the insured's recent hospitalization, it is

   RECOMMENDED:

   1. The Defendant's Motion for Summary Judgment (doc. 28) be **DENIED**.

   IT IS SO REPORTED at Tampa, Florida, on October 12, 2005.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report. It shall also bar the party from attacking on appeal the factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) (*en banc*).


cc:     The Honorable Steven D. Merryday
        Counsel of Record