UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOYCE RESHKE, as Personal Representative
of the Estate of Robert A. Reshke, deceased,

     Plaintiff,

v.                                            Case No.: 8:04-cv-2035-T-23MAP

GUARANTEE TRUST LIFE INSURANCE
COMPANY, an Illinois corporation,

     Defendant.

_____/

## ORDER

This is an action to recover death benefits Plaintiff claims are due under a credit life insurance policy.  At issue is whether the insured, who is the Plaintiff's deceased husband, incorrectly informed the Defendant (the insurer) that he had no "abnormality" of the lung.  After a bench trial, I find the Defendant has proven by a preponderance of the evidence that the insured omitted informing it about his emphysema when he purchased the credit life policy and that the Defendant would not have issued the policy had that fact been disclosed.  Accordingly, for the reasons set out below, judgment is entered for the Defendant.[1]

*A.  Findings of Fact*

Two months before applying for credit life insurance, Robert Reshke suffered a collapsed lung.  He went to the emergency room, received treatment, and was discharged the same day.  Two days later, the same lung collapsed.  This time he was hospitalized for ten days.  A CT scan taken

---

[1] The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72.  I make these findings of fact and law as required by Fed. R. Civ. P. 52.

during that stay revealed "extensive emphysematous changes with bulae in the aspices and the right mid-lung field anteriorly." [2] Or as Reshke's pulmonologist, Dr. Aranibar, explained – Reshke had emphysema. That disease had likely created air sacs ("blebs"); when a bleb popped, air escaped from the lung causing it to collapse. *See* doc. 23 (deposition of Dr Aranibar at pp. 6-10). Dr. Aranibar, per his custom, informed Reshke about the diagnosis and warned him to quit smoking. *Id* at pp. 16, 31-33.[3]

On April 9, 2001, Reshke purchased a $171,000 RV at Lazy Days RV Center. As part of that purchase, he bought a credit life insurance policy for $100,000 issued through the Defendant, Guarantee Trust Life Insurance Company, for a lump sum premium of $8,959.90. Unlike other life insurance products, this one did not require the prospective insured to submit to a physical before approving coverage. Instead, this simplified application asked the applicant a single question about his medical history: "[w]ithin the past five years you have received medical care, treatment or diagnosis by a member of the medical profession for any of the following: … any condition involving an abnormality of … lungs?" A "yes" answer automatically disqualified the applicant from coverage. *See* Defendant ex. 1.

Although Reshke informed Clyde Bailey, the Defendant's onsite agent, about his collapsed lung, a fact Bailey did not consider a disqualifying abnormality, Reshke omitted telling Bailey about

---

[2] *See* radiology report dated February 24, 2001 (Defendant's ex. 5).

[3] Admittedly, Dr. Aranibar, who testified by deposition, remembered few specifics about his discussions with Reshke from Reshke's hospitalization to the beginning of April when Reshke purchased the credit life policy. Nonetheless, the physician stated as a matter of course he discusses his diagnosis with his patients. *See* doc. 23 at pp. 31-32.

his emphysema.  Bailey or Reshke checked the "no" box.[4]  Thus, Reshke represented he had no medical conditions that made him ineligible for insurance.[5]

Slightly more than a year after buying the RV, Reshke died of lung cancer.[6]  Plaintiff filed her claim, but the Defendant, after an investigation, denied it, voided the policy, and refunded her the premium.  The Defendant informed Plaintiff it had concluded her husband had received medical care for and had been diagnosed with a lung abnormality within five years prior to his application; moreover, had the Defendant known that at the time of the application it would not have issued the insurance certificate.  *See* Defendant's ex. 9 and 10.  Plaintiff then brought this action for breach of contract.

### C. Discussion

Section 627.409 (Fla. Stat.) (2001) provides an insurer may deny or rescind coverage if the insured makes a material statement that is incorrect on the application:

---

[4]  Both sides introduced a copy of the application for certificate of insurance (Plaintiff's ex. 1 and Defendant's ex. 1).  Although both should be the same, they are different in one respect, Reshke's answer to the health question shows a typed "xx."  The Defendant's record shows a handwritten checkmark.  While these differences are puzzling, they are not particularly relevant.  Both forms recorded the same intended answer, an answer the parties do not dispute.

[5]  Four witnesses testified about what occurred in the salesman's cubicle that day – Bailey, Mrs. Reshke, and the Oliveros (Plaintiff's brother and sister-in-law).  Plaintiff has no recollection of the specifics of the conversation regarding the application or the purchase of credit life other than she maintains her husband told "everybody" he suffered a collapsed lung and therefore told Bailey about it.  The Oliveros likewise remember generalities but mostly buttress Plaintiff's account.  Bailey remembers nothing.  The only common thread to all their testimony, and one which the parties agree about, is that Reshke did not tell Bailey about his diagnosis of emphysema.  Admittedly, Plaintiff claims neither she nor her husband knew about this, but, for reasons stated *infra*, whether the Reshkes realized then that Mr. Reshke had been diagnosed with emphysema is irrelevant.

[6]  None of Reshke's medical tests or examinations done before the purchase showed cancer.  And the Defendant does not contend Reshke suffered from cancer at the time he applied for insurance.

(1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:

> (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.

> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

As the plain language of the statute suggests, even if the insured had innocently or unintentionally made an incorrect statement, an insurer can avoid liability if it can show that the true facts, had it known them then, would have materially affected its coverage. *Continental Assurance Co. v. Carroll,* 485 So.2d 406, 409 (Fla. 1986) (unintentional statement); *Life Ins. Co. of Virginia v. Shifflet,* 201 So.2d 715 (Fla. 1967) (interpreting predecessor statute to § 627.409 to permit insurer to vitiate policy even if applicant makes an incorrect statement regarding material matter without knowledge of the statement's incorrectness or untruth); *see also Fabric v. Provident Life & Accident Ins. Co,* 115 F.3d 908, 912-913 (11th Cir. 1997) (applying § 627.409 and noting that "[a] material misstatement provides a basis for rescission even if the applicant could not have known of its inadequacy); *Mims v. Old Line Life Ins. Co.,* 46 F.Supp.2d 1251, 1255 (M.D. Fla. 1999) (misrepresentation need not be made intentionally or knowingly). The statute's legal basis rests on the application of the principle that a contract can be voided if issued on a mutual mistake. *Carroll,* 485 So.2d at 409. An insurer seeking to rescind or avoid coverage must prove the misrepresentation, its materiality, and the insurer's detrimental reliance. *Griffin v. American General Life and Acc. Ins.*

*Co.,* 752 So.2d 621, 623 (Fla. 2dDCA 1999).

    *C.  Conclusion*

    The Plaintiff does not dispute that her husband had been diagnosed with emphysema prior to applying for credit life insurance; she only claims she and her husband did know about it when her husband answered the application's sole health question.  But their lack of knowledge is not the relevant issue here.  Florida law clearly permits an insurer to void the policy when an insured makes an incorrect statement on application seeking information material to coverage even if the insured acted in good faith and without knowledge of the statement's falsity.[7]  Given the materiality of the diagnosis and the applicant's incorrect statement about his lack of any such diagnosis, it is hereby

    ORDERED:

    1.  The Clerk is directed to enter judgment for the Defendant.

    DONE AND ORDERED at Tampa, Florida on March 16, 2006.

                                  *Mark a. Pizzo*
                                  MARK A. PIZZO
                                  UNITED STATES MAGISTRATE JUDGE

---

    [7]  Florida recognizes an exception to this principle.  Applying the rule that parties to a contract are free to "contract around" a state law dealing with insurance, some contracts ask the applicant to give his best answer to a question relying on his "knowledge and belief."  This standard sets a lower accuracy bar than § 627.409 contemplates.  Namely, an applicant's inaccurate but truthful answer does not support rescission.  *See Green v. Life & Health of America,* 704 So.2d 1386 (Fla. 1998).  Reshke's application did not contain the "knowledge and belief" language.  Hence, *Green* does not apply.

5